## Lehr's Petition.

*Cities of third class—Municipal improvements—Streets—Opening—Damages—Appointment of viewers.*

1. The provisions of article 14, sections 1 and 2, of the Act of June 27, 1913, P. L. 568, relating to the taking of private lands for street or other purposes by cities of the third class, contemplate that, as to streets, viewers should be appointed to assess the damages and benefits against all the properties upon the line of improvement.

2. Where, upon the petition of one party interested, viewers had been appointed to assess the damages as to him alone, others being likewise affected, the order of court was revoked and the petition dismissed.

Petition for appointment of viewers. C. P. Lehigh Co., Oct. T., 1924, No. 8.

*Fred B. Gernerd*, for petitioner; *Robert L. Stuart*, City Solicitor, contra.

IOBST, J., Feb. 16, 1925.—Nora I. Lehr presented her petition to the court alleging that she is the owner of certain ground situate in the 15th Ward of the City of Allentown, known as Nos. 826 and 828 Sherman Street; that the city by ordinance ordained the location, adoption and naming of Cambridge Street in said ward; that the opening of Cambridge Street, as adopted, will

take and appropriate a portion of her lands, and, therefore, she asks the court for the appointment of viewers for the purpose of assessing the damages or benefits that have accrued by reason of the taking of her lands. The court thereupon appointed viewers "to inquire into and investigate the allegations and facts set forth in the petition and assess such damages as may be due to the petitioner by reason of the taking of said lands, etc."

The City of Allentown, upon petition alleging irregularities, obtained a rule to show cause why the petition should not be dismissed and the order appointing viewers vacated.

The petitioner subsequently filed another petition, asking leave to amend so as to include a provision for the assessment of benefits, if any, and to fix a time for the viewers to meet upon the premises for the purpose of making the view. In answer to this rule, the city filed its answer, alleging that if the amendment prayed for were allowed the original petition, as amended, would still be irregular, illegal and not in conformity to the provisions of the act of assembly providing for the appointment of viewers, and assigns a number of reasons.

At the argument, counsel agreed that a disposition of the second reason would solve the matter in controversy, the other matters complained of being amendable. The reason assigned is as follows: "That the acts of assembly do not contemplate the appointment of viewers for the assessment of damages and benefits accruing to a single owner of property upon the line of improvement where other properties of different ownership are affected, but expressly provided for the appointment of viewers to assess the damages and benefits against the properties upon the line of improvement."

There is no testimony before us as to how many properties are on the line of the proposed improvement, but at the argument counsel conceded that there were a number of other properties affected by the location and adoption of the street in question between the points of location.

The question involved is as to whether a single owner of property upon the line of improvement, where other property owners are affected, can come into court and ask for the appointment of viewers for the purpose of ascertaining the damages done or the benefits which have accrued to the individual property of the petitioner.

Counsel for the petitioner contends that these proceedings are instituted under the provisions of the Act of June 27, 1913, P. L. 568, commonly known as the Clark Act, and that this act warrants this procedure.

Article XIV, sections one and two of the act, reads as follows:

"Section 1. Any city of the third class shall have power, whenever it shall be deemed necessary, either in the laying out, opening, widening, extending or grading of streets, lanes or alleys, or in the erection or construction of water, gas or electric light works, slopes, embankments or sewers, or in the changing of watercourses, or for any other purpose authorized by this act, to take, use, occupy or injure private lands, property, toll-bridges or materials; and in case the compensation for the damages done or the benefits accruing therefrom have not been agreed upon, the Court of Common Pleas of the proper county, or any law judge thereof in vacation, on application thereto by petition by said city or by any person interested, shall appoint three members of the board of viewers of the proper county to view and ascertain the damages done, and the benefits which have accrued, by reason of the said taking, use, occupancy or injury; and shall appoint a time, not less than twenty nor more than thirty days thereafter, for said viewers to meet at or upon the premises where the damages are alleged to be sustained or the property

taken, or on the line of said street or sewer improvement, as the case may be, of which time and place ten days' notice shall be given by the petitioners to the said viewers and to all parties interested, by personal service upon the parties, their agents, attorneys or legal representatives, by publication in one or more newspapers or by hand-bills posted upon the premises or otherwise, as the said court shall direct, having regard to the circumstances of each case.

"Section 2. The said viewers, or any two of them, having been duly sworn or affirmed faithfully, justly and impartially to decide and a true report to make concerning all matters and things to be submitted to them and in relation to which they are authorized to inquire in pursuance of the provisions of this act, and having viewed the premises or examined the property or materials, shall estimate and determine the quantity, quality and value of said land so taken, occupied or injured, or to be taken, occupied or injured, or the property and materials so used or taken away, as the case may be, and having a due regard to, and making just allowance for, the advantages which may have resulted, or which may seem likely to result, to the owners of said land, property or material in consequence of the making of the improvements aforesaid for which the property or materials are to be taken; and having made a fair and just comparison of said advantages and disadvantages, they shall estimate and determine their value and whether any, and, if any, what amount of damages has been or may be sustained and to whom the same is payable; and after having determined the damages sustained to all the properties affected by said improvement, together with the benefits as hereinafter mentioned, they shall make report thereof to the said court."

We are unable to find any cases construing these sections of the act upon the questions involved. However, the Act of May 16, 1891, §§ 1 and 2, P. L. 75, is practically identical on this point, and the cases construing this latter act are in point.

Section 1 of the Act of 1913, however, confers additional powers upon third class cities, not enumerated in the Act of 1891, to wit: The power, when deemed necessary, to take, use, occupy or injure private lands for the purpose of the erection or construction of water, gas or electric light works. Therefore, the legislature has these additional provisions in the first section of article XIV, above quoted and not found in the first section of the Act of 1891, to wit: That they (the viewers) shall "meet at or upon the premises where the damages are alleged to be sustained." However, both acts contain the provision that viewers are to meet on the line of said street improvement; the Act of 1913 adding the phrase, "as the case may be." We take it that the legislature has drawn a clear line between these distinct city improvements, for we can readily understand that where land is taken for the purpose of erecting water, gas or electric light works, it may affect but a single owner of land, and the viewers are to meet upon that land, while lands taken for street improvement purposes usually affect many owners, therefore the legislature has said they, the viewers, shall "meet at or upon the premises where the damages are alleged to be sustained or the property taken or on the line of said street or sewer improvement, as the case may be." When land is taken for street purposes, as in the instant case, the provisions of the Acts of 1891 and 1913 are identical in so far as imposing a duty upon the viewers. The second section of the Act of 1913, above referred to, also seems to make a distinction between lands taken for street purposes and lands taken for the purpose of erecting public works. In the latter case, they, the viewers, shall view and examine the property or materials, shall estimate and determine the quantity, quality and value of the land so taken away, while in the case of

land taken for street or sewer improvements, they shall meet upon the line of improvement, view the premises, fix damages or assess the benefits, and after their determination of the damages sustained to all of the properties affected by said improvement, shall make a report to the court.

These latter words undoubtedly relate to the entire taking along the line of improvement, and notwithstanding the right of a property owner to present a petition for the appointment of viewers, the viewers so appointed are required to view and ascertain the damages done, not to one particular property-holder, but to all persons affected by the taking. This is further emphasized in the first section of the Act of 1913, by the requisites as to notice to all parties interested.

The Constitution gives to the citizens of this Commonwealth who are property owners the right of compensation when damaged by the taking of property for street purposes. The legislature provides the method of procedure. We cannot read something into the act that is not there. We must follow the letter and manifest intention of the act. Nothing but a clearly expressed legislative intent to the effect contended for will induce us to declare such a construction of this statute.

Quoting from the opinion of Porter, J., in the case of Cooper v. Scranton City, 21 Pa. Superior Ct. 17, 21: "A statutory remedy having been provided for the enforcement of the constitutional right, that remedy ought to have been pursued. The ascertainment of the damages and benefits arising from the execution of a public work by a municipality is a matter in which the public has, and many private individuals may have, an interest. It is important that those who are to receive compensation for injuries and those who are to pay for benefits accruing to the property should all be heard before the same board of viewers in order that all conflicting rights may be considered. The measure of damages in such a case is different from that which applies in an action of trespass. The benefits to the property as a whole must be taken into consideration in connection with any injury that may result to land or buildings."

In the case of Orthodox Street, Philadelphia's Appeal, 169 Pa. 499, 501, the Supreme Court says: "It is certainly true that the Act (May 16, 1891) contemplates a single proceeding for the assessment of all damages. The provisions of the first and second sections indicate such a purpose quite clearly."

The petitioner, to substantiate her position, relies upon the construction placed on the Act of May 24, 1878, P. L. 129, by the Supreme Court in the case of Seaman v. Washington Borough, 172 Pa. 467. While it is true that this act, which applies to a change of grade or street lines in boroughs causing damage to the owner or owners of property abutting thereon, provides a remedy for the individual citizen in the single case, the provisions of that act are so entirely different from the provisions of the Acts of 1891 and 1913 that no comparison can be made. In the case referred to, the court held that the Act of 1891 did not repeal the Borough Act of May 24, 1878, P. L. 129, and that, if it had repealed the act, the plaintiff had no case.

We are convinced that the Act of 1913 contemplates but one view and assessment upon the same street improvement. The petitioner can have her remedy upon petition drawn in conformity with that act, as above indicated.

Now, Feb. 16, 1925, the rules now pending are made absolute, the order of the court thereon vacated, and the petition is dismissed, at the cost of the petitioner.

From Edwin L. Kohler, Allentown, Pa.